## ROBERT GIBSON v. THE STATE.

### No. 3088.   December 21, 1904.

**1.—Theft of hog—Confessions—Arrest—Search Warrant—Fruits of Crime.**

Where on trial for the theft of a hog, the evidence showed that prosecutor had sworn out a search warrant and was proceeding with a deputy sheriff to search appellant's house for the meat of the hog, and that the appellant fell in with them and on the way to his house told them that he had killed the hog, and when they reached his house pulled a box of fresh pork from under the bed saying, "here it is," whereupon he was arrested. Held that by virtue of the search warrant he was not under arrest and that his confessions made prior to his arrest were admissible in evidence without previous warning that they could be used against him, and because the fruits of the crime were discovered by reason thereof.

**2.—Evidence—Hearsay—Conversation Between Third Parties.**

A conversation between the defendant's wife and her sister with reference to the alleged stolen property was purely hearsay evidence and not admissible.

**3.—Same—Leading Question—Germane Testimony.**

A question by the State as to whether or not defendant at the time he had the conversation with witness told witness where he could find the meat alleged to have been stolen, was not leading, and the answer thereto that defendant did not tell witness where the meat could be found was entirely germane.

**4.—Same—Doctrine of Carving—Justice Court—Jurisdiction.**

Testimony offered by defendant who was on trial for hog theft that a justice of the peace had tried and fined him for this offense and that defendant had paid said fine and costs, was properly excluded on the ground that the justice court had no jurisdiction to finally try the case, and the doctrine of carving did not apply.

**5.—Same—Fact Case—Corpus Delicti.**

Where the corpus delicti has been clearly proven — the loss of the animal, the finding of one similar in size, appellant's confession to the taking with the explanation of innocent intention, the verdict of the jury will not be disturbed in finding defendant guilty of theft of a hog.

Appeal from the District Court of Smith.  Tried below before Hon. Tom C. Davis.

Appeal from a conviction of hog theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*B. B. Beaird,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant's punishment was assessed at two years confinement in the penitentiary for the theft of a hog, the property of Will Parker. Without copying the testimony in detail, it shows, substantially the following: Parker had a black sow and some pigs, which were fed daily at his house. One day the sow failed to come up to be fed, and prosecutor immediately instituted diligent search for her. Appellant lived a short distance from prosecutor. Prosecutor failed to find his hog, came to town, met appellant and another party and had a conversation with them, in which he stated he was going to get a search warrant for the hog. To this appellant apparently assented. Prosecutor obtained a search warrant, authorizing him to search appellant's house as well as other houses in the neighborhood where appellant lived. The fact appears to show that appellant knew that this search warrant was obtained. After prosecutor obtained the warrant he secured the services of Joe Barbee, deputy sheriff, and together they started to execute the warrant. Near the jail, in Tyler, appellant became a member of the party, and accompanied the deputy and prosecutor some distance in the country. The deputy sheriff left the party, after they had proceeded on their way in the general direction of appellant's house some distance; and after he left, appellant confessed to prosecutor that he had killed the hog, and offered to compromise the same. Prosecutor refused this, and referred him to the deputy sheriff. The deputy sheriff returned, and appellant talked with him, confessed that he had killed prosecutor's hog. On this point, the deputy sheriff testified: "I think we were about a mile or a mile and a half of defendant's house, when he stopped me and wanted to get me to compromise the matter, and wanted me to search all the other houses. * * * He acknowledged to me that he killed Parker's hog. He did not know at that time that I had a search warrant for his house; that is, I don't know that he knew it, but I told him I had a search warrant and I would go and see who had the meat. I had told him I had a search warrant when he told me about having killed a hog. He confessed to getting the hog. I do not know that I can tell what Gibson said to me, but Parker stopped me and said that Gibson wanted to see me, and I turned my horse around, and they were then together. I went back to where Gibson was, and he told me he had gotten the hog and wanted to pay me to let him turn the hog over to Parker. I told him I did not do that sort of business, and that I would go on and see who had the hog, and whether or not he had it. This was after I told him I had a search warrant." After these confessions to the taking of the hog by appellant to the prosecutor and the deputy sheriff, the party went on to appellant's house. There they saw certain fresh meat in the box. Prosecutor took the box containing the meat and carried it home. He testified that the hog meat was that of a hog about the same size as the sow he had missed. He did not identify the meat as that of his hog; said he could not tell whether it was a sow

or not. "I did not notice to see any mark or not; could not recollect any ear-mark on the hog; did not see the head at all." Prosecutor also testified that defendant knew his hog, and had seen him feed it around his home. Defendant took the stand and admitted killing the hog, but insisted that it belonged to his father-in-law, who had previously died, leaving his wife one of the joint heirs of the property; and denied in toto making the above stated confessions to the deputy sheriff and prosecutor.

By bill of exceptions number 1, appellant complains of the introduction of the testimony of Parker as to what defendant said in the presence of Barbee, the officer, after they got together at the railroad, because the officer had a search warrant to search Gibson's house, and was on his way in company with defendant to search his house; that defendant was then in charge of the officer, and under arrest, and had not been warned that any statement he might make about the hog-transaction, would be used against him in evidence. This exception as well as the other exceptions, is embodied in the statement of facts; and to this bill the court appends this explanation: "This exception was taken as stated, but the proof showed that defendant was not under arrest or in custody." The facts detailed show that appellant was not arrested until after the meat was taken charge of by the prosecutor. Thereupon the deputy sheriff arrested appellant, and carried him before a justice of the peace. We do not think that the mere fact that prosecutor had sued out a search warrant of appellant's house and other houses, in order to ascertain who had his meat, would per se be an arrest. The search warrant merely authorized the officer to find the meat belonging to the prosecutor. Any statement appellant made to the officer and the prosecutor prior to the time he was arrested would not require a warning in order to render said statement admissible. It follows that it was not error to overrule the motion of appellant to exclude the testimony showing the confessions.

Bill number 2 complains of the introduction of practically the same testimony.

While deputy sheriff Barbee was upon the stand, the State asked him, the following question: "State whether or not defendant at the time you had the conversation with him, told you where you would find the meat?" Defendant objected on the ground that it was a leading question. Witness answered, "No, he did not tell me where I would find the meat. When we got to defendant's house he went in and pulled a box out from under the bed and said, 'here it is.' He went in ahead of me." In the first place, we do not think the question is leading. Furthermore, the testimony is entirely germane. Appellant, as stated, was not under arrest at the time.

Bill number 5 shows appellant objected to the following testimony of the deputy sheriff Barbee: "Defendant did not object to turning the meat over to Parker," because appellant was not warned, and because defendant was in the hands of an officer and any statement he made, whether

it be in answer to a question or not, could not be used against him in evidence. This qualification is appended to the bill: "This exception was taken, as stated, and was overruled because Barbee said he did not arrest defendant until after Parker had taken the meat." We do not think there was any error in the ruling of the court.

Bill 6 shows that while Rosa Graybill was upon the stand, she testified in behalf of appellant, and was not permitted to state, in behalf of appellant, "My sister told me before I went there that he had a hog. My sister is appellant's wife." This testimony was not admissible, because pure hearsay, as disclosed by the bill.

Bill number 7 shows that after appellant had been taken before justice of the peace Guinn, appellant, who was a witness in his own behalf, was asked: "Did Guinn take you in custody from Barbee and take you into his office and try you and assess a fine against you, and collect a fine off of you, and the court costs?" State's counsel objected, which was sustained; and appellant excepted because said justice was a legal justice of the peace of Smith County, then and there having legal and lawful jurisdiction of the person of defendant in such matter, and had elected for the State and carved out of a transaction, and tried defendant, and fined him, and defendant had paid the penalty, being the fine and costs. Appellant claims that this estops the State from further prosecution. If permitted, defendant would have given an affirmative answer to the question above. We cannot see in what way this testimony was prejudicial. The bill of exceptions does not show what he fined him for. Furthermore a misdemeanor fine in a justice court could not bar a subsequent prosecution for a felony of this character. The justice of the peace had no jurisdiction to try appellant for theft, and if he fined him for theft he was without jurisdiction to try the case. Being without jurisdiction, it could not be a bar to any subsequent prosecution for a felony, to wit: theft of this hog.

Bill number 8 complains that the court erred in not sustaining the motion to exclude all the testimony of appellant, wherein he confessed to the officer or to the prosecutor that he had taken the hog in question. We do not think there was any error in excluding this testimony.

The charge of the court presented all the issues raised by the evidence in a proper way. We think the confessions were admissible even if appellant was under arrest, on the ground that the fruits of the crime were discovered by reason thereof. In this case we have the corpus delicti clearly proven. The loss of the animal, the finding of one similar in size, appellant's confession to the taking, and his testimony to the same effect, with the explanation of innocent intention in the taking, which was solved by the jury adversely to appellant under appropriate instructions, sustain the verdict of the jury. No error appearing in the record, the judgment is affirmed.

*Affirmed.*